WWR#040926889

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO (CANTON)

| | |
|---|---|
| IN RE: | CASE NO. 22-60128 |
| MUSTAFA NAGIB GIABOU | CHAPTER 13 |
| CANDICE MARIE GIABOU | JUDGE RUSS KENDIG |
| DEBTORS | |

PERFORMANCE FINANCE'S
OBJECTION TO CONFIRMATION OF PLAN AS TO
2019 POLARIS SLINGSHOT VIN# 57XAASFA8K8131055

Now comes Creditor, PERFORMANCE FINANCE (hereinafter referred to as "Objecting Creditor"), claimant and party in interest in the above Chapter 13 proceeding, and pursuant to Bankruptcy Rule 3015, hereby OBJECTS to the Debtors' proposed Chapter 13 Plan (hereinafter referred to as "Plan"). For the factual, legal and statutory basis set forth in the attached Memorandum, confirmation of the Debtors' Plan should be DENIED.

WELTMAN, WEINBERG & REIS CO., L.P.A.

/s/ Milos Gvozdenovic
Milos Gvozdenovic (0077969)
Weltman, Weinberg & Reis
Attorney for Movant
965 Keynote Circle
Cleveland, OH 44131
216-739-5647
mgvozdenovic@weltman.com

# MEMORANDUM

1. On August 8, 2018, Mustafa and Candice Giabou, (hereinafter referred to as "Debtors"), executed one Promissory Note and Security Agreement for the purchase of a 2019 POLARIS SLINGSHOT VIN# 57XAASFA8K8131055. Copies of substantiating loan documentation and Ohio Certificate of Title are attached hereto and made a part hereof.

2. On February 17, 2020, Debtors filed a Chapter 13 petition and plan with this Court proposing to pay PERFORMANCE FINANCE $10,000.00 at 5.25% interest as a secured claim.

3. The total amount of PERFORMANCE FINANCE's claim is $14,997.80 at 18.99% interest.

4. The debt for the Collateral was incurred August 8, 2018, which is more than 910 days before the date of the filing of the petition

5. Pursuant to 11 U.S.C. § 506(a)(1): "An allowed claim of a creditor secured by a lien on property in which the estate has an interest … is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property … and is an unsecured claim to the extent that the value of such creditor's interest … is less than the amount of such allowed claim."

6. The amount of a secured claim "shall be determined based on the replacement value of the property securing the claim as of the date of the filing petition without deduction for cost of sale or marketing." Replacement value is defined by § 506(a)(2) as "the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time the value is determined."

7. The retail value of the 2019 POLARIS SLINGSHOT VIN# 57XAASFA8K8131055, is $20,999.00 pursuant to NADA Guidelines. See Attached NADA

Guides valuation.

8. Debtors were required to maintain proper insurance coverage on the collateral.

9. Debtors have failed to maintain insurance coverage on the collateral, or has failed to provide PERFORMANCE FINANCE with proof of proper vehicle insurance coverage.

10. Plan should not be confirmed pursuant to 11 U.S.C. § 1325 (a)(5)(B)(ii) because it proposed to pay Objecting Creditor less than the amount of its allowed secured claim, and Debtors have failed to properly insure the collateral.

**WHEREFORE**, confirmation should be denied.

WELTMAN, WEINBERG & REIS CO., L.P.A.

/s/ Milos Gvozdenovic
Milos Gvozdenovic (0077969)
Weltman, Weinberg & Reis
Attorney for Movant
965 Keynote Circle
Cleveland, OH 44131
216-739-5647
mgvozdenovic@weltman.com

# CERTIFICATE OF SERVICE

I hereby certify that on 9 day of March, 2022 a true and correct copy of the foregoing Objection to Confirmation Plan was served:

Via the Court's electronic case filing system on the following who are listed on the Court's Electronic Mail Notice List:

Robert A. Ciotola, Attorney for Debtors at rac@raciotola.com

Dynele L Schinker-Kuharich, Trustee at DLSK@Chapter13Canton.com

Office of the U. S. Trustee

and on the following by **ordinary U.S. Mail** addressed to:

CANDICE MARIE GIABOU
MUSTAFA NAGIB GIABOU
10180 State Route 212, Apt. A
Bolivar, OH 44612

                                              /s/ Milos Gvozdenovic
                                              Milos Gvozdenovic (0077969)
                                              Weltman, Weinberg & Reis
                                              Attorney for Movant
                                              965 Keynote Circle
                                              Cleveland, OH 44131
                                              216-739-5647
                                              mgvozdenovic@weltman.com

  NADAguides Value Report 3/4/2022

# Value Report

## 2019 Polaris Slingshot S

## Values

|  | Suggested List Price | Low Retail | Average Retail |
|---|---|---|---|
| Base Price | $20,999 | $15,655 | $20,600 |
| **Options** (Change) |  |  |  |
| **Total Price** | **$20,999** | **$15,655** | **$20,600** |

# OHIO CERTIFICATE OF TITLE

## STATE OF OHIO — No. 76 0487 8663

ORIGINAL

ISSUING CNTY: STARK
RESIDENT CNTY: STARK

ISSUE DATE: 08/14/2018

IDENTIFICATION NUMBER: 57XAASFA8K8131055

PURCHASE PRICE: $19,999.00
TAX: $1,299.94
MLG BRAND: ACTUAL

YEAR: 2019
MAKE: POLS
MAKE DESCRIPTION: POLARIS
BODY TYPE: MC
MODEL DESCRIPTION: SLINGSHOT
MILEAGE: 4
EVIDENCE: OH-MCO - IN STATE

OWNER: MUSTAFA GIABOU
1094 BAIER AVE
LOUISVILLE, OH 44641

PREVIOUS OWNER: BAIR'S POWERSPORTS
4617 EMMETT BOYD CIR NW
NORTH CANTON, OH 44720

FIRST LIENHOLDER: PERFORMANCE FINANCE
DATE OF LIEN: 08/14/2018
PO BOX 17879
RENO, NV 89511

76154342   MN000741

LIEN DISCHARGE
Lienholder _____
by: _____ Authorized signature _____ date
CLERK LIEN CANCELLATION
by: _____ Deputy Clerk _____ date

LIEN DISCHARGE
Lienholder _____
by: _____ Authorized signature _____ date
CLERK LIEN CANCELLATION
by: _____ Deputy Clerk _____ date

WITNESS MY HAND AND OFFICIAL SEAL THIS 14TH DAY OF AUGUST, 2018
(SEAL)

%145971496

*%145971496*

%145971496

LOUIS P. GIAVASIS
CLERK OF COURTS

VOID IF ALTERED

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.

BMV 3800 4/16 [760-1503]



# PROMISSORY NOTE, DISCLOSURE AND SECURITY AGREEMENT

Performance Finance
A division of Evergreen Bank Group
P.O. Box 17879
Reno, NV 89511

| Borrower Name and Address | Co-Borrower or Co-Signer Name and Address | Dealer Name and Address |
|---|---|---|
| Mustafa N Giabou<br>1094 Baier Ave<br>LOUISVILLE, OH 44641 | , | Bair's Powersports<br>4617 EMMETT BOYD CIRCLE NW<br>NORTH CANTON, OH 44720 |

**PROMISE TO PAY:** You (meaning all borrowers, jointly and severally) promise to pay to the order of Performance Finance, a division of Evergreen Bank Group, any and all amounts due under this Promissory Note, Disclosure and Security Agreement ("Contract"), including, but not limited to, the principal amount shown below plus daily simple interest at the Contract interest rate of __18.99__ from the date You sign this Contract until Your loan is paid in full. Interest will be charged on a daily basis of 1/365 beginning on the date hereof until all amounts owed on this Contract are repaid. You further agree to pay any Late Charge, Return Fee or other fees, costs or other charges provided for in this Contract. You agree to make regular monthly payments in U.S. Dollars in accordance with the payment schedule shown below. You may prepay all or any part of the unpaid principal balance without paying any penalty. If You prepay, we will not refund to You any portion of the finance charge.

**DESCRIPTION OF COLLATERAL:** To secure the payment and performance of the obligations arising under this Contract, Borrower grants Lender a security interest in the property described below ("Collateral")(as more fully described in the Additional Terms and Conditions of this Contract).

| ☒ New<br>☐ Used | Year | Make and Model | Vehicle Identification Number |
|---|---|---|---|
| | ~~2018~~<br>2019 | POLARIS   SLINGSHOT | 57XAASFA8K8131055 |

THE ADDITIONAL TERMS AND CONDITIONS CONTAINED ON THE FOLLOWING PAGES ARE A PART OF THIS CONTRACT

## TRUTH-IN-LENDING DISCLOSURE

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | AMOUNT FINANCED<br>The amount of credit to you or on your behalf. | TOTAL OF PAYMENTS<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 18.99 % | $ 11948.69 (e) | $ 17502.19 | $ 29450.88 (e) |

(e) means an estimate
Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 72 | 409.04 | Monthly Beginning 09/08/2018 |

**Security Interest:** You are giving Us a security interest in the Collateral being purchased.
**Property Insurance:** You understand that You may be required to purchase property insurance on the Collateral. You can buy this insurance through any person of Your choosing acceptable to Us (please see below for what could happen if You do not maintain such insurance).
**Late Charge:** If a payment is more than 10 days late, You will be charged five percent (5%) of the full amount of the scheduled payment.
**Prepayment:** If You pay off some, or all, of Your loan early, You will not have to pay a penalty and will not be entitled to a refund of any part of the finance charge already paid. See the Additional Terms and Conditions below regarding nonpayment, default, and any required prepayment in full before the scheduled date.

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Sale Price (including any accessories, extras and services) .................................................. $ 19999.00 (1)
2. Sales Tax .................................................. $ 1299.94 (2)
3. Total Downpayment = Net Trade-in $ __0.00__ + Cash Downpayment $ __5000.00__
   Your Trade-in is a _____ .................................................. $ 5000.00 (3)
4. Unpaid Balance of Cash Price (Amount paid on Your Account) (1+2 minus 3) paid to dealer .......... $ 16298.94 (4)
5. Amounts Paid to Others on Your Behalf:
   A. To: Public Officials For Title, License, Lien Fee and Registration Fees (Itemize) ........... $ 1118.25

   B. Other Charges (Identify Who Must Receive Payment and Describe Purpose)
   To: _____ For Service Contract       $ 0.00 *
   To: _____ For GAP Insurance          $ _____ *
   To: _____ For Tire and Wheel         $ 0.00 *
   To: _____ For Prepaid Maintenance    $ 0.00 *
   To: Other Taxable / Non-Taxable   For Other   $ 85.00 *
   Total Other Charges and Amounts Paid to Others on Your Behalf .................................. $ 1203.25 (5)
6. Amount Financed/Principal Amount (4+5).................................................. $ 17502.19 (6)

*Dealer may share in or receive a portion of these amounts.

THE UNDERSIGNED AGREE TO ALL TERMS OF THIS CONTRACT, ACKNOWLEDGE RECEIPT OF ALL PAGES OF THIS CONTRACT, AND AFFIRM THAT THIS CONTRACT WAS COMPLETELY FILLED IN BEFORE SIGNING. ANY COSIGNER ACKNOWLEDGES RECEIPT OF THE COSIGNER NOTICE CONTAINED HEREIN OR ATTACHED HERETO.

_/s/ Mustafa Giabou_       8/8/18
Borrower's Signature        Date         Co-Borrower's/Co-Signer's Signature        Date

# ADDITIONAL TERMS AND CONDITIONS

**ADDITIONAL TERMS AND CONDITIONS.** Please see below for additional terms and conditions. You are bound by these terms in the same manner as if they were printed on the first page of this Contract.

**SIGNATURE.** By signing this Contract, You agree to all terms of this Contract and request Us to issue the proceeds of this Note. You acknowledge receiving a copy of this Contract. You authorize Us to accept Your facsimile or electronic signature on this Contract. You agree that Your facsimile signature or electronic signature on this Contract will have the same legal force and effect as Your original signature, regardless of whether transmitted to Us through facsimile, electronic mail, scanned copy or other means, and regardless of whether Your assent to the terms of this Contract was made through the signing of this Contract, the use of keypad, mouse or other device to select an item, button, icon or similar act or action to indicate Your agreement and acceptance of the terms hereof.

**1. DEFINITIONS.** "You" or "Your" means each borrower and each other person or entity who agrees to pay this Note and therefore agrees to the terms of this Note. "We" or "Us" means Performance Finance, a division of Evergreen Bank Group, an Illinois-chartered bank, sometimes referred to as the "Lender" and including its successors and assigns. The terms, "Contract," "Agreement," and "Note" are used interchangeably herein and have the same meaning throughout this document.

**2. APPLICABLE LAWS.** The laws of the state where Lender's lien has been recorded applies as to matters regarding Lender's security interest in the Collateral. With respect to all other matters, including as to the rate of interest and other related fees due and owing under this Contract, the laws of the United States and the laws of the State of Illinois shall apply to the greatest extent permitted by applicable law.

**3. BORROWER PROMISES.** All Borrowers acknowledge time is of the essence with this Contract and agree to make the payments required hereunder at the times required in this Contract. Each Borrower warrants that the information supplied to Lender in applying for credit and in the making of this Contract is true and correct; that the Collateral will only be used for personal, family or household purposes; that this Contract, and all signatures, are genuine in all respects; that all parties have the capacity to contract; that the Contract is duly executed with proper authority; that Borrower has no knowledge of any fact that would impair the validity of this Contract; and that the Collateral was sold to Borrower for his, her or its personal ownership and not for another person.

**4. PROTECTION OF COLLATERAL; LENDER'S LIEN.** You agree to pay Lender all You owe under this Contract even if the Collateral is damaged, destroyed or missing. You agree to keep the Collateral in good condition and repair. You agree not to remove the Collateral from the United States, and not to sell, gift, rent, lease or otherwise transfer any interest in the Collateral of this Contract without Lender's express written permission. You agree to protect the Collateral from claims of third persons and not to grant any lien or encumbrance on the Collateral. You agree not to expose the Collateral to misuse or confiscation and to maintain the Collateral at the place identified as Borrower's address on Page 1 of this Contract unless Lender agrees otherwise. You will make sure Lender's security interest is perfected and a lien on the Collateral is shown on the title, or other documentation acceptable to Lender. You agree to provide all acts, things and writings as Lender may at any time request to protect or enforce its rights in the Collateral and other collateral. You will not do anything to defeat Lender's lien. You expressly authorize Lender, or Lender's agent, to take any action necessary to perfect Lender's security interest in the Collateral, including, without limitation, the filing of a UCC-1 Financing Statement with respect to the Collateral in your name and without further action by You. If Lender pays any repair bills, storage costs, taxes, fines, DMV fees or other charges on or for the Collateral, (although Lender is not required to do so on Your behalf) You agree to repay the amount when Lender asks for it.

**5. SECURITY INTEREST.** To secure the indebtedness evidenced by this Contract, You grant, assign and convey to Lender a purchase money security interest in the Collateral stated on the first page of this Contract and any of the following items that are purchased and financed in connection with this Contract: (a) any accessories, equipment, and replacement parts installed on or accompanying the Collateral (as may be more fully described in the Bill of Sale for the Collateral); (b) any insurance premiums and charges for service or GAP products returned to Lender; and (c) any proceeds of insurance policies, service or GAP products on the Collateral (For purposes of this Contract, (a)-(c) are included in the term "Collateral"). The purchase money security interest is in addition to any other security interest or lien Lender holds or which you are required to provide as a condition of the Note. This secures payment of all amounts You owe on the Contract and on any transfer, renewal, or extension of this Contract. It also secures Your other agreements in this Contract. To the extent permitted by law, the Collateral under this Contract also secures Your other obligations to lender, whether now owing or incurred hereinafter.

**6. PAYMENTS.** Unless otherwise specified by Lender in writing, all payments by You under this Contract must be mailed to the address specified in the billing statements sent to You by Lender. Additional payment options by telephone or online may be available to You, but Lender reserves the right to charge a convenience fee for the use of these payment channels. All payments received by 5:00 p.m. Central Standard Time, Monday through Friday ("Business Day") will be credited to your account as of such Business Day. Payments received after 5:00 p.m. on any Business Day will be credited to Your account on the following Business Day. You understand and agree that all payments received by Lender will first be applied to accrued but unpaid interest, then to principal due on this Note and then to any Late Charges or other charges.

**7. TRUTH IN LENDING DISCLOSURES.** The amounts disclosed as "FINANCE CHARGE" and "TOTAL OF PAYMENTS" on the first page of this Contract have been computed on the assumption that all payments will be received on the exact scheduled due dates. If payments are made early, these amounts will decrease. Payments made after the due dates will increase these amounts. The amount of any increase or decrease will be reflected in the amount of the final payment, or may increase or reduce the number of payments necessary to pay the Contract in full. If You pay the loan in full or in part early, You will not be charged a penalty for such prepayment.

**8. LATE CHARGES AND OTHER CHARGES.** If we have not received the full amount of any payment by the end of ten (10) calendar days after it is due, You may be required to pay a late charge equal to five percent (5%) of the full amount of the scheduled payment ("Late Charge"). If any payment under this Agreement is made with a check, ACH transfer or other instrument that is dishonored for any reason, You agree to pay Us a returned item fee of Twenty-five dollars ($25) in addition to any other amount or charges You may owe Us ("Return Fee"). Other charges and fees may apply for extensions, deferrals and other requests you make of us during the course of this loan.

**9. PHYSICAL DAMAGE INSURANCE.** If required by Lender, You agree to have, and provide proof to Lender of, physical damage insurance covering loss or damage to the Collateral while any amounts owed by You under this Contract remain unpaid, showing Lender as "additional insured and loss payee." If at any time during the term of this Contract You do not have physical damage insurance covering the Collateral, We may, if We decide, buy insurance which covers our interest only. We are under no obligation to buy insurance, but may do so if We desire. If We buy insurance, We will let You know what type it is and the charge You must pay. We may either ask for immediate payment from You for the cost of such insurance or may add the insurance premium(s) to the unpaid principal amount on this Contract, interest will be charged on the insurance premium(s) at the Annual Percentage Rate disclosed in this Contract, and You agree to pay the insurance premium(s) with interest in equal installments along with the payments shown on the payment schedule. You understand and agree that if We purchase any physical damage insurance, We will be acting in our interest only. You further understand and agree that the purchased insurance will not contain any liability coverages (including, without limitation, for bodily injury or property damage caused to others), will only cover our interest in the Collateral, may have deductible amounts different

---

THE UNDERSIGNED AGREE TO ALL TERMS OF THIS CONTRACT, ACKNOWLEDGE RECEIPT OF ALL PAGES OF THIS CONTRACT, AND AFFIRM THAT THIS CONTRACT WAS COMPLETELY FILLED IN BEFORE SIGNING. ANY COSIGNER ACKNOWLEDGES RECEIPT OF THE COSIGNER NOTICE CONTAINED HEREIN OR ATTACHED HERETO.

| Borrower's Signature | Date | Co-Borrower's/Co-Signer's Signature | Date |
|---|---|---|---|
| [signed] | 3/28/18 | | |

than those in Your provided insurance, and may be more expensive than equivalent insurance which You could buy on Your own. You agree that We can purchase such insurance with coverage that will be retroactive to the date Your insurance terminated. You understand and agree that We may receive compensation or reimbursement in connection with such insurance. If the Collateral is lost or damaged, You agree that We can use any insurance settlement to repair the Collateral or to apply to Your debt, at our sole and absolute discretion. If any charge for required insurance is returned to Us, it may be credited to Your account or used to buy similar insurance or insurance which covers only our interest in the Collateral. Any refund on optional insurance or service/repair plan obtained by Us will be credited to Your account. Credits to Your account will be in the same manner as payments.

**10. DELAY IN ENFORCING RIGHTS; WAIVER.** To the greatest extent allowed by law, You waive presentment, demand for payment and notice of dishonor by Lender. Lender can delay or refrain from enforcing any of its rights under this Contract without losing them. For example, We may extend the time for making some payments without extending others. You agree not to send Us partial payments marked "paid in full", "with prejudice", "without recourse" or any similar restrictive endorsements. If You send these items to our address specified for payment, they shall not be deemed received and the endorsement will not be effective against Us even though We cash the checks on which such endorsements are contained.

**11. DEFAULT.** You will be in default under the Note or other parts of the Contract if any one or more of the following events occurs: (a) You fail to make a monthly payment within ten (10) calendar days of its due date or any other payment when due; (b) Lender reasonably believes You have provided Us false or misleading information in connection with this loan; (c) any Borrower or Co-signer dies or is declared incompetent; (d) You fail to pay or keep any other promise on any other loan You have with Us; (e) the Collateral is damaged or stolen; (f) You breach any agreement or covenant in this Contract; (g) You fail to obtain or maintain any insurance required under this Contract; (h) any Borrower or Co-signer institutes bankruptcy proceedings or any such proceedings are instituted against any Borrower or Co-Signer; or (i) Lender reasonably believes the prospects for payment of all amounts due on this Note are impaired or that the balance of payments due hereunder has become insecure in whole or in part.

**12. REMEDIES UPON DEFAULT.** If You do not pay Us as agreed or are otherwise in default, or if an event occurs substantially reducing the value of the Collateral, materially impairing Your prospects to pay under this Contract, We may, at our option, declare the entire unpaid principal amount immediately due and owing. You will, following such event, at our request, deliver the Collateral to a place We designate that is reasonably convenient to You. At our option following a default, in accordance with applicable law, We can repossess the Collateral from You subject to any right to cure default You may have. To take the Collateral, We can go on Your land or anywhere the Collateral is located so long as it is done peacefully. If there are any personal belongings in the Collateral such as clothing or tools, We may store them. However, We do not have to store them and will not be responsible for the items beyond what the law may require. Any accessories, equipment or replacement parts will remain with the Collateral. We may sell the Collateral at the time and place of our choosing at a private or public sale or through any broker.

**13. GETTING THE COLLATERAL BACK AFTER REPOSSESSION.** If We repossess the Collateral We will send You a notice of sale disclosing that You have the right to redeem the Collateral by paying the accelerated balance and other costs of repossession. Under certain circumstances, You may have the right to reinstate the account by paying past due amounts plus any late charges,

the cost of taking and storing the Collateral and other expenses that We or our agents have incurred. We will use the net proceeds of the sale to pay all or part of Your debt. If You owe less than the net proceeds of sale, We will pay You the difference, unless We are required to pay it to someone else. If You owe more than the net proceeds of the sale, You will pay Us the difference between the net proceeds of the sale and what You owe when We ask for it. If You do not pay this amount when asked, We will charge interest on it. If You have wrongfully damaged the Collateral, You will be liable to Us for the damages.

**14. ATTORNEYS' FEES AND COLLECTION COSTS.** To the extent permitted by applicable law, if We hire an attorney other than our salaried employee to collect what You owe, You agree to pay our reasonable attorneys' fees, including any incurred in connection with any bankruptcy or appellate proceeding, and any court costs and out of pocket expenses, whether or not the suit is filed, plus interest on such sums at the highest rate allowed by law. Additionally, to the greatest extent permitted by applicable law, You agree to pay all fees and costs incurred by us related to any third-party collection firm We retain to collect any amounts that You owe to Us under this Contract, including, without limitation, any and all contingency or percentage-based fees charged by such firm. Furthermore, You agree to reimburse Us for any costs we incur, in our discretion, in order to locate You or the Collateral in the event that we are required to retain a third-party for such services.

**15. CREDIT REPORTING.** You agree that We may request a consumer credit report in connection with Your application and in connection with any update, renewal, or extension of credit for which an application is made.

**16. NOTICE OF LIMITED AGENCY.** The dealer has no authority to approve or to make this loan. The dealer is not our agent in connection with the sale of the Collateral You are purchasing with the proceeds of this loan. The dealer is only authorized to prepare the loan documents and to obtain Your signatures.

**17. WARRANTY DISCLAIMER.** You understand that Lender is not offering any warranties and that there are no implied warranties of merchantability, of fitness for a particular purpose, or any other warranties, expressed or implied by Lender, covering the Collateral.

**18. RELEASE OF LIEN.** Upon Your payment in full of the amounts due hereunder, We will release our lien, if any, on the Collateral. You are responsible for our costs and for any costs charged by any public officials for such release.

**19. CUSTOMER IDENTIFICATION.** To help the government fight terrorism and money laundering, We are required to obtain, verify and record information identifying each Borrower under this Contract. We will therefore ask for your name, address, date of birth and other information that will allow us to identify You. We may ask to see Your driver's license or other identifying documents.

**20. MISCELLANEOUS.** You agree to be bound by any document provided by Us that changes the terms and conditions of this Contract due to state or federal law requirements. Any change in the terms or conditions of this Contract must be in a writing signed by Lender. No oral changes are binding. You may not assign this Contract, or Your obligations hereunder without our express prior written consent. We may assign this Contract in our sole discretion and any assignee shall be entitled to all of the rights and remedies of Lender hereunder. This Contract contains the entire Contract between You and Us. If any part of this Contract is invalid, all other parts of the Contract will remain valid.

---

Notice: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BORROWER COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BORROWER SHALL NOT EXCEED AMOUNTS PAID BY THE BORROWER HEREUNDER.

---

Do not sign this Contract before You read it. You are entitled to a copy of this Contract. You may, at any time, prepay the unpaid balance of this Contract.

**CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS ENTIRE CONTRACT BEFORE YOU SIGN IT.**

THE UNDERSIGNED AGREE TO ALL TERMS OF THIS CONTRACT, ACKNOWLEDGE RECEIPT OF ALL PAGES OF THIS CONTRACT, AND AFFIRM THAT THIS CONTRACT WAS COMPLETELY FILLED IN BEFORE SIGNING. ANY COSIGNER ACKNOWLEDGES RECEIPT OF THE COSIGNER NOTICE CONTAINED HEREIN OR ATTACHED HERETO.

| Borrower's Signature | Date 8/8/18 | Co-Borrower's/Co-Signer's Signature | Date |